IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:08-CV-620-D

| | |
|---|---|
| VIVIAN RICHARDSON and DANNY RICHARDSON, individually and as Guardians ad Litem of A.L. RICHARDSON, <br><br>Plaintiffs, <br><br>v. <br><br>UNITED STATES OF AMERICA, <br><br>Defendant. | ) ) ) ) ) ) ) ) ) **ORDER** ) ) ) ) ) |

This case comes before the court on two motions: a motion (D.E. 32)[1] by plaintiffs Vivian Richardson and Danny Richardson, individually and as guardians ad litem of A.L. Richardson ("the minor plaintiff") (all plaintiffs collectively "plaintiffs"), for leave to serve supplemental expert reports, or in the alternative, for extension of time to serve rebuttal expert reports; and a motion (D.E. 25) by defendant United States of America ("defendant") to strike several of plaintiffs' filings in support of their motion. The motions have been fully briefed.[2] For the following reasons, the court will allow plaintiffs' motion and deny defendant's motion.

---

[1] Plaintiffs initially filed an unredacted version of their motion (D.E. 21). The court dismissed it without prejudice (D.E. 29) and ordered plaintiffs to refile the redacted version currently pending (D.E. 32). In addition, plaintiffs' counsel's affidavit (with exhibits) (D.E. 31) supporting the pending motion was incorrectly filed as a separate motion and should be terminated as such by the Clerk.

[2] Plaintiffs filed a memorandum of law (D.E. 33) and affidavits and exhibits (D.E. 31-1 through 31-20 and D.E. 32) in support of their motion, defendant filed a notice (D.E. 36) adopting its previously filed memorandum (D.E. 24) and exhibits (D.E. 24-1 through 24-11) in opposition, and plaintiffs filed a reply (D.E. 37).
Defendant filed a memorandum of law (D.E. 25) in support of its motion to strike, plaintiffs filed a memorandum (D.E. 27) in opposition, and defendant filed a reply (D.E. 35).

## BACKGROUND

This action based on medical malpractice and related claims was commenced in December 2008 and arises under the Federal Tort Claims Act. (Compl. (D.E. 1) ¶ 1). Plaintiffs allege that Air Force medical providers, acting as agents and/or employees of defendant, committed medical malpractice and negligence in treating the minor plaintiff. Specifically, plaintiffs maintain that during initial medical examinations around the time of the minor plaintiff's premature birth in 1992, defendant's personnel noted that the minor plaintiff suffered from bilateral undescended testes, a congenital condition in which the testicles have not properly descended into the scrotum. (Aff. of Thomas Valet (D.E. 31-1) ¶ 3). The minor plaintiff was examined periodically by defendant's personnel through 2002, with medical records documenting that his testicles had not descended. (*Id.*). No treatment was provided until the minor plaintiff had a sonogram in December of 2002 which revealed that his testicles were located in his abdomen and not within his scrotum. (*Id.*). By this time, the testicles had atrophied to such an extent that notwithstanding surgical intervention, they could not be salvaged and today the minor plaintiff is a functional castrate. (*Id.*). Defendant denies liability. (*See generally* Ans. (D.E. 7)).

A Scheduling Order was entered on 21 May 2009 (D.E. 10), which provided that reports from retained experts were due by 2 October 2009 and rebuttal experts by 20 November 2009. (Sch. Ord. ¶ 1). Supplementations under Rule 26(e) were due within 30 days of receipt, but in no event after 31 December 2009. (Joint Proposed Discovery Plan (D.E. 9) at 3, adopted by Sch. Ord.). The Scheduling Order was thereafter modified (*see* D.E. 13) at defendant's request to clarify that the parties' expert due dates were staggered and that plaintiffs would designate their experts on or before 2 October 2009 and defendant would designate its experts on or before 20 November 2009. No date

for service of rebuttal reports was set in the modified Scheduling Order. (*See id.*). Discovery closed on 31 December 2009. (Sch. Ord. ¶ 2).

On 2 October 2009, plaintiffs served the expert reports of five experts. Each of the opinions of plaintiffs' experts contained conclusions that the minor plaintiff was born with a congenital condition known as undescended testicles, in which the testicles fail to descend permanently into the scrotum. (Valet Aff. ¶ 7). Plaintiffs' experts contended that the minor plaintiff should have had surgery for this condition in the first two years of his life. (*Id.*). On 23 November 2009, defendant served its expert reports. Defendant's experts posited that after his birth the minor plaintiff's testicles were "retractile," meaning that the testicles moved in and out of the scrotum. They also stated that the Air Force medical providers acted properly in monitoring the position of his testicles and that they did not deviate from accepted medical standards by waiting until the minor plaintiff was 10 years old to treat his condition. (*Id.* ¶ 9).

Following service of the expert reports, counsel for both parties discussed mediation. A private mediator, Donald Beskind, was selected and mediation was scheduled for 7 January 2010. (*Id.* ¶ 10). Defendant did not conduct any depositions of plaintiffs or plaintiffs' experts before discovery ended on 31 December 2009, the date set in the Scheduling Order. (*Id.*).

The mediation proceeded on 7 January 2010 and resulted in a dispute as to the scope of the testimony of plaintiffs' experts. (*Id.* ¶ 11). Plaintiffs' counsel stated, hypothetically, that even if one were to accept the opinions of defendant's experts that it was proper for the Air Force doctors not to surgically treat the minor plaintiff's condition by age two and that it was proper for them to monitor the testicles from 1992 to 2002, there was still malpractice by defendant in monitoring and treating his condition during that time frame. (*Id.*). Plaintiffs noted that their experts were prepared to assert such opinions in response to the opinions of defendant's experts. (*Id.*). Plaintiffs' counsel

3

had apparently provided defendant's counsel a position paper and the report of an additional expert relating to the opinions at issue two days prior to the mediation, 5 January 2010. (*See* Def.'s Mem. (D.E. 24) 2).

Plaintiffs' counsel, through the mediator, was advised that defendant's counsel did not believe it would be appropriate for plaintiffs' experts to offer testimony expressing the opinions based on the hypothetical because such opinions were not contained in plaintiffs' previously served expert reports. (Valet Aff. ¶ 12). Plaintiffs disagreed, contending that the additional opinions of their experts were in response to defendant's expert reports. (*Id.*). As a result of the disagreement, the mediation impassed. (*Id.* ¶ 13).

Following a telephone conference with the undersigned requested by counsel (*see* D.E. 18) and the subsequent filing of a joint motion for a briefing schedule on the issue of the additional expert opinions and related relief (D.E. 19), the court entered an order (D.E. 20) establishing a schedule and cancelling the dispositive motion deadline pending resolution of the issue of the additional expert opinions. Plaintiffs filed their instant motion by the prescribed deadline and, in accordance with the order, included as attachments to the supporting memorandum five expert reports setting out the opinions in question (D.E. 31-16 through 31-20)), among them the one provided defendant prior to the mediation.

In addition to filing an opposition memorandum, defendant responded with their motion to strike several of plaintiffs' exhibits as irrelevant: correspondence (D.E. 31-5), plaintiffs' initial expert reports (D.E. 31-10 through 31-14), defendant's expert reports (D.E. 31-15), and the minor plaintiff's medical records (D.E. 31-3 and 31-4). Defendant's motion also seeks to strike the affidavit by plaintiffs' counsel supporting plaintiffs' motion for exceeding the 15-page limit on legal memorandum set in the court's briefing order.

4

## PLAINTIFFS' MOTION

I. DETERMINATION OF APPLICABLE STANDARD

An initial issue presented by plaintiffs' motion is determination of the standard by which it is to be evaluated. If the reports are deemed supplementations, the deadline for their submission was controlled by the Scheduling Order. As indicated, it set a due date of 31 December 2009. Plaintiffs' additional expert reports were served, along with plaintiffs' motion, on 5 February 2010,[3] after this deadline. Plaintiffs' motion seeking extension of this deadline, because it is in a scheduling order, would be subject to the good cause standard of Federal Civil Rule 16(b)(4).

If, on the other hand, the reports are treated as rebuttal reports, they are not subject to the Scheduling Order because it set no deadline for rebuttal reports. Rule 26 would have set the deadline as 23 December 2009, or 30 days after defendant's expert reports were served. *See* Fed. R. Civ. P. 26(a)(2)(C). Plaintiffs' additional expert reports were, of course, tardy in relation to this deadline as well. To the extent plaintiffs seek extension of this deadline, the motion is subject to Federal Civil Rule 6(b)(1)(B) and the excusable neglect standard in it.

In their motion, plaintiffs expressly rely on Rule 6. The rule provides, in relevant part, that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). "Excusable neglect" is an elastic concept, though courts have discretion to allow late filings even where the delay was the result of inadvertence or mistake. *Pioneer Invs. Serv. Co. v. Brunswick Assoc. Ltd. P'shp*, 507 U.S. 380, 392

---

[3] This is the date plaintiffs' unredacted motion (D.E. 21) and supporting papers were filed.

5

(1993). "The determination of whether neglect is excusable is at the bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These circumstances include: (1) 'danger of prejudice'; (2) 'length of delay and its potential impact on judicial proceedings'; (3) 'reason for the delay'; and (4) 'whether the movant acted in good faith.'" *Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, at *2 (D. Md. 6 Aug. 2010) (internal quotations partially omitted).

Notwithstanding their express reliance on Rule 6, plaintiffs' arguments that characterize their additional expert reports as partially supplemental in character also implicate Rule 16. It provides that where a date is set in a scheduling order, "it may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). The good cause modification provision specific to Rule 16(b)(4) takes precedence over the generally applicable extension provisions of Rule 6(b)(1). *E.g., Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997); *Corkrey v. Internal Revenue Serv.*, 192 F.R.D. 66, 67 (N.D.N.Y. 2000). The good cause provision of Rule 16(b)(4) does not focus on the prejudice to the non-movant or bad faith of the moving party, but rather on the moving party's diligence. *Halpern v. Wake Forest Univ. Health Sciences*, 268 F.R.D. 264, 274 (M.D.N.C. 2010); *Dilmar Oil Co.*, 986 F. Supp. at 980; *see also Rich Food Servs. v. Rich Plan Corp.*, No. 5:99-CV-677, 2001 U.S. Dist. LEXIS 25955, *45 (E.D.N.C. 20 Nov. 2001) ("The good cause standard focuses on the diligence of the party seeking the modification to the scheduling order."); Fed. R. Civ. P. 16(b), advisory committee's note – 1983 amendment ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "[T]he scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Forstmann v. Culp*, 114

6

F.R.D. 83, 85 (M.D.N.C. 1987) (quoting *Gestetner Corp. v. Case Equipment Co.,* 108 F.R.D. 138, 141 (D. Me. 1985)).

Defendant agrees that application of Rule 6 or Rule 16 depends on whether the additional expert reports are deemed rebuttal or supplemental in character, respectively. Defendant further contends that the reports must also meet the substantial justification and harmlessness standard of Federal Civil Rule 37(c)(1).

It permits a court to exclude information or witnesses that are not timely disclosed unless the failure to disclose was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The provision reads:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). In determining whether the failure to disclose timely was substantially justified or is harmless, courts consider the following factors: "(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony." *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.,* 318 F.3d 592, 596 (2003) (quoting *Burlington Ins. Co. v. Shipp,* 215 F.3d 1317 (2000)). The district court has broad discretion in deciding if a failure to disclose is substantially justified or harmless. *Carr v. Deeds,* 453 F.3d 593, 602 (4th Cir. 2006). "[W]hether a late disclosure is prejudicial depends on whether testimony was unexpected and left the other party without adequate opportunity to prepare for it." *Michelone v. Desmarais,* 25 Fed.

7

Appx. 155, 159 (4th Cir. 2002). As can be seen, the standard under Rule 37(c)(1) is similar to that under Rule 6(b)(1)(B).

The court believes that plaintiffs' additional expert reports are both rebuttal and supplemental in character, rendering the standards of both Rules 6 and 16 applicable. The court opts to apply the more rigorous of these standards, the excusable neglect standard of Rule 6(b)(1)(B), which includes the same types of considerations addressed by the Rule 16(b)(4) standard. The court will also apply the Rule 37(c)(1) standard of substantial justification and harmlessness.

## II. MERITS OF PLAINTIFFS' MOTION

### A. Application of Excusable Neglect Standard of Rule 6(b)(1)(B)

As indicated, in applying the excusable neglect standard of Rule 6(b)(1)(B), courts focus on prejudice to non-moving party from the movant's delay; the length of the delay involved and its potential impact on judicial proceedings; the reason for the delay; and whether the movant acted in good faith. The court will examine each of these factors in turn below.

#### 1. Prejudice to Defendant

Defendant contends that allowing plaintiffs to rely on the additional expert reports would prejudice it by essentially permitting plaintiffs to add a new and unexhausted claim, that is, a negligent failure to diagnose, monitor, and refer the minor plaintiff to urology. Defendant further argues that the theory reflected in the additional opinions extends the time frame for potential liability from the minor plaintiff's first two years of life all the way through 2002.

As plaintiffs point out, however, they are not abandoning their initial claims and theories, but rather, are offering a response to the position of defendant's experts. In addition, the prejudice that defendant urges relates more to the substance of the opinions than to the delay in asserting those opinions. Thus, this factor weighs in favor of plaintiffs.

8

## 2. Length of Delay and Impact on Judicial Proceedings

The length of the delay at issue was not substantial. The deadline for service of the additional reports was, at the earliest, 23 December 2009. Plaintiffs provided defendant notice of the nature of the additional opinions their experts had developed within two weeks of this deadline, on 5 January 2010, through their pre-mediation submissions. Plaintiffs served the additional reports a month later, on 5 February 2010, but that service was made pursuant to a briefing schedule established by the court.

Defendant contends that it is prepared to file dispositive motions in this case and that the additional reports may change their planned strategy. As before, this purported prejudice does not relate to the delay itself, but rather to the substance of the additional reports. It is also relevant, as plaintiffs note, that very little discovery has been taken and no trial date has been set. Further, plaintiffs suggest that if the court were to allow reliance on their reports, they would not have any objection to allowing defendant to depose any or all of plaintiffs' expert witnesses. The court agrees that such an opportunity would be appropriate. For this and the other reasons discussed, the court finds that this factor weighs in favor of plaintiffs.

## 3. Reasons for Plaintiffs' Delay

To justify their delay, plaintiffs first explain that they believe that it would be permissible for their experts to opine on defendant's expert opinions even in the absence of formal supplementation. It is out of an abundance of caution, they say, that they seek to supplement formally so as to ensure their ability to present the additional opinions. Plaintiffs also contend that it was only after their experts reviewed defendant's expert reports in preparation for mediation that they become aware of the potential need to supplement. They state these opinions could not have been asserted until after receipt of defendant's expert reports, which were served in late November 2009. Thus, they argue

9

that this is not a case where plaintiffs could have provided the information several months or more sooner than they did, as defendant appears to suggest.

The court believes plaintiffs have offered an adequate explanation for their delay.[4] This factor therefore also tends to favor plaintiffs.

### 4. Good Faith

Defendant contends that plaintiffs had access to all of the relevant information for years and by intentionally limiting their expert reports to one theory made a strategic choice to which they should be held. It further argues that they demonstrate bad faith by now attempting to change course and expand the scope of their claims.

The court does not agree. The record fails to show that plaintiffs have acted in bad faith.

### 5. Summary

Having considered all of the relevant factors and the salient facts supporting each, the court finds that plaintiffs have demonstrated excusable neglect. Accordingly, plaintiffs' motion should be allowed.

### B. Application of Substantial Justification and Harmlessness Standard of Rule 37(c)(1)

The court turns now to application of the substantial justification and harmlessness standard in Rule 37(c)(1). Consideration of the factors relevant to this standard, as previously reviewed, leads to the same conclusion that plaintiffs should be allowed to rely on the additional expert reports.

Specifically, the court is not persuaded that to the extent the additional reports presented defendant with any undue surprise, it rose to a level sufficient to justify exclusion of the reports. Defendant will be given an opportunity to depose plaintiffs' experts and allowing a brief delay for

---

[4] The justification offered would be sufficient to meet the good cause standard of Rule 16(b)(4).

10

Case 5:08-cv-00620-D    Document 40    Filed 09/30/10    Page 10 of 12

such discovery will not disrupt the trial, which again has not yet been scheduled, or any of the other proceedings in this case. Plaintiffs have demonstrated the importance of the additional expert reports and have adequately explained their failure to disclose them within the applicable time limits.

Accordingly, the court finds the failure of plaintiffs to timely serve the additional expert reports was substantially justified and is harmless to defendant within the meaning of Rule 37(c)(1)(2). The court therefore rejects defendant's contention that Rule 37 precludes plaintiffs from relying on the reports.

## DEFENDANT'S MOTION

Defendant's motion to strike has been rendered moot as to some of the challenged exhibits because the underlying objection was to the presence of personal identifying information in the exhibits[5] and plaintiffs have subsequently filed redacted versions of those exhibits omitting the personal identifying information, as directed by the court (*see* D.E. 29). Therefore, as to these exhibits, defendant's motion will be denied as moot.

Defendant continues to contend that the remaining exhibits in question[6] should be stricken. It claims that the challenged exhibits are not relevant to the reasons plaintiffs failed to timely serve the expert opinions. Plaintiffs contend, to the contrary, that the exhibits contain necessary background information designed to help the court in its analysis of their motion. The court agrees with plaintiffs, having found the exhibits at issue to have been helpful, and will deny defendant's motion to strike the challenged exhibits.

---

[5] The affected exhibits included correspondence (D.E. 31-5) and numerous other exhibits that included personal identifying information regarding the minor plaintiff.

[6] These exhibits are plaintiffs' initial expert reports (D.E. 31-10 through 31-14), defendant's expert reports (D.E. 31-15), and the minor plaintiff's medical records (D.E.31-3 and 31-4).

11

The court also finds meritless defendant's final contention, that plaintiffs' counsel's affidavit exceeds the permissible page limits. Plaintiffs' submissions do not exceed any applicable page limitations. This portion of the motion to strike will therefore also be denied.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED as follows:

1. Plaintiffs' motion (D.E. 32) is ALLOWED;

2. Plaintiffs' additional expert reports (D.E. 31-16 through 31-20) shall be treated for all purposes as if timely served;

3. Defendant may depose any of plaintiffs' expert witnesses on or before 29 October 2010;

4. Defendant's motion (D.E. 25) is DENIED in part as MOOT and DENIED in part ON THE MERITS;

5. Dispositive motions, if any, shall be filed by 30 November 2010;

6. Except as modified herein, the Scheduling Order (D.E. 10), as amended (*see* D.E. 13, 20), shall remain in full force and effect.

SO ORDERED, this the 30 day of September 2010.

James E. Gates
United States Magistrate Judge