IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CV-620-D

VIVIAN RICHARDSON, and spouse, )
DANNY R. RICHARDSON, individually )
and as guardians ad litem of A.L.R., )
minor child, )
                                         )          **ORDER**
                Plaintiffs, )
                                         )
       v. )
                                         )
THE UNITED STATES OF AMERICA, )
                                         )
                Defendant. )

Plaintiffs filed this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671– 2680 [D.E. 1]. In their complaint, plaintiffs allege that military doctors committed medical malpractice in their care of A.L.R., negligently cleared A.L.R. to be transferred overseas, and failed to obtain informed consent regarding A.L.R.'s treatment, along with various derivative claims. The parties have completed discovery. On October 21, 2010, the United States of America ("defendant" or "government") filed a motion to dismiss for lack of subject-matter jurisdiction [D.E. 45]. On November 11, 2010, plaintiffs responded in opposition [D.E. 53], attaching as exhibits A.L.R.'s medical records, the administrative claim, plaintiffs' and defendant's expert reports, and affidavits from two of plaintiffs' experts. On November 24, 2010, the government replied and moved to strike the affidavits [D.E. 57]. For the reasons explained below, the court denies the motion to dismiss and the motion to strike.

I.

The presence of subject-matter jurisdiction is a threshold issue that the court must consider before the merits of the case. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93–94 (1998); Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). Issues regarding

subject-matter jurisdiction may be raised at any time. See, e.g., Arbaugh v. Y & H Corp., 546 U.S. 500, 506–07 (2006); United States v. Hartwell, 448 F.3d 707, 715 (4th Cir. 2006); Friedman's, Inc. v. Dunlap, 290 F.3d 191, 195–96 (4th Cir. 2002). Plaintiffs, as the party asserting subject-matter jurisdiction, must prove that it exists by a preponderance of the evidence. See, e.g., Steel Co., 523 U.S. at 104; United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009); Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999); Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). When a defendant alleges in a Rule 12(b)(1) motion that a plaintiff pleaded insufficient facts to support subject matter jurisdiction, a court must assume the truthfulness of the facts alleged. Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009). When a defendant challenges the veracity of facts underpinning subject-matter jurisdiction, evidentiary proceedings may be conducted and the disputed jurisdictional facts resolved. Id. However, if the jurisdictional facts are inextricably intertwined with those central to the merits, "the entire factual dispute is appropriately resolved only by a proceeding on the merits." Jadhav, 555 F.3d at 348 (quotation omitted); see Arbaugh, 546 U.S. at 514. Thus, "[t]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); see Kerns, 585 F.3d at 193 n.6. In making this decision, a court should employ the familiar summary-judgment standard. Kerns, 585 F.3d at 193 n.6, 196. Therefore, for purposes of resolving inextricably intertwined jurisdictional facts, the court views the evidence and all reasonable inferences in the light most favorable to plaintiffs. Scott v. Harris, 550 U.S. 372, 378 (2007).

On August 26, 1992, A.L.R. was born at Seymour Johnson Air Force Base ("SJAFB") in Goldsboro, North Carolina. Medical records are unclear as to whether A.L.R.'s testicles had properly descended at the time of birth. See Pls.' Opp'n, Ex. A at 144–45, 156. Nevertheless, in September 1992, SJAFB medical staff cleared A.L.R. to move with his family to Spangdahlem Air Base, Germany. The experts disagree as to whether A.L.R. received adequate genital examinations

2

after arriving in Germany. See id., Ex. H at 2–3; Ex. I at 2; Ex. J at 2; Ex. K at 3; Ex. M at 7, 11, 15, 23, 30, 40. A.L.R. returned to North Carolina in August 1996. On September 11, 1996, a physician noted that A.L.R.'s right testicle could not be palpated. As a result, an SJAFB physician examined A.L.R. and diagnosed him with a retractile right testicle. The doctor recommended a follow-up examination at A.L.R.'s five-year-old wellness exam. In January 1997, A.L.R. returned to Germany. In December 1998, A.L.R. and his family returned to the United States. On January 25, 1999, a physician at Shaw Air Force Base ("Shaw AFB"), South Carolina performed a physical and noted that he was unable to palpate A.L.R.'s testicles in his scrotum. A.L.R. was referred to a urologist. That urologist diagnosed A.L.R. with "hypermotile testes" and recommended A.L.R. return "on an as needed basis." Pls.' Opp'n, Ex. A at 235. Records from a subsequent physical indicate that the testes were not palpable. On August 24, 2000, because of the concern from the latest physical, a physician at Shaw AFB again examined A.L.R. That physician reviewed the urologist's findings, confirmed a diagnosis of retractile testes, reassured A.L.R. and his parents, and stated that no further follow up was "needed for this." Id. at 245. On December 12, 2002, a physician at Shaw AFB was unable to palpate A.L.R.'s testicles. A consult was requested, and on January 13, 2003, a scrotal ultrasound was performed. That ultrasound indicated A.L.R.'s testicles had not descended. Shaw AFB physicians referred A.L.R. to the Medical College of Georgia Children's Medical Center. Although A.L.R. had functioning testicular tissue in his abdomen, an exploratory surgery was conducted. That surgery confirmed A.L.R.'s testicles were in his abdomen, and that they could not be placed in the scrotum without intervention. During the exploratory surgery, vessels for both testicles were ligated to facilitate future placement in the scrotum. Subsequent surgery incised the right testicle because of atrophy, but placed the left testicle in the scrotum. However, that testicle eventually ceased functioning. In September 2008, an ultrasound indicated no evidence of testicular tissue. In 2009, doctors inserted testicular prostheses. As a result, A.L.R. is without testicular function and receives testosterone-replacement therapy.

3

II.

Defendant contends that the court lacks subject-matter jurisdiction because the alleged negligent acts occurred in a foreign country and, therefore, are excluded from the FTCA. Defendant also argues that the court lacks subject-matter jurisdiction because no tort claim for "negligent clearance for overseas assignment" exists under North Carolina law, and because plaintiffs failed to exhaust their alternative theory of medical malpractice.

The FTCA grants limited jurisdiction to district courts over tort claims brought against the United States. See 28 U.S.C. § 1346(b). "The FTCA ... serves to convey jurisdiction when the alleged breach of duty is tortious under state law, or when the Government has breached a duty under federal law that is analogous to a duty of care recognized by state law." Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 969 (4th Cir. 1992) (emphasis removed). However, the FTCA's grant of jurisdiction excludes claims "arising in a foreign country." 28 U.S.C. § 2680(k). This exception covers military installations in foreign lands. See, e.g., United States v. Spelar, 338 U.S. 217, 219–20 (1949). Furthermore, a person may not bring an action against the United States unless the person first presents an administrative claim with the appropriate federal agency. 28 U.S.C. § 2675(a). The FTCA requires "two elements for sufficient presentment of a claim to an agency: 1) written notice sufficient to cause the agency to investigate, and 2) a sum-certain value on the claim." Ahmed v. United States, 30 F.3d 514, 517 (4th Cir. 1994); United States v. Kubrick, 444 U.S. 111, 119 n.6 (1979). Failure to administratively exhaust a FTCA claim is a jurisdictional defect, depriving a district court of subject-matter jurisdiction. Kokotis v. U.S. Postal Serv., 223 F.3d 275, 278 (4th Cir. 2000); Plyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990).

Initially, defendant argues that the foreign lands exception deprives the court of subject-matter jurisdiction over the medical malpractice claim. Because the jurisdictional facts are inextricably intertwined with those central to the merits, the court views the facts and all reasonable inferences in the light most favorable to plaintiffs. See Kerns, 585 F.3d at 193. Defendant claims

4

that, because A.L.R. lived in Germany from age 3 months until age 6 years, the alleged negligent acts all occurred in Germany, and any negligent acts that occurred after A.L.R.'s return to the United States were outside the time-frame within which A.L.R.'s undescended testicles could be treated. In support, defendant claims that plaintiffs' experts admit that the "window" of treatment for undescended testicles closed at the age of 2.

The court disagrees. A fair reading of the cited expert opinions indicates the plaintiffs' experts believe that the standard of care dictates surgery by the age of two, but surgery after the age of two may still prove successful.

Alternatively, defendant argues that the window certainly closed by age 7, citing Dr. Keiller's opinion that any negligence occurring after A.L.R. reached the age of 7 was not causative of A.L.R.'s injury. Def.'s Reply 2–5; see Pls.' Opp'n, Ex. J at 4. Even assuming Dr. Keiller is correct, A.L.R.'s medical records are inconsistent with defendant's position. A.L.R. received medical care at SJAFB in November 1996 for the specific purpose of evaluating his testicular condition. Thus, even if A.L.R.'s condition was not treatable at the time of his return to the United States in 1999, that does not preclude a finding that it was treatable in 1996. Viewing the evidence and all reasonable inferences in the light most favorable to plaintiffs, summary judgment on this issue would be inappropriate. See Scott, 550 U.S. at 378; Kerns, 585 F.3d at 193. Thus, the court rejects the defendant's reliance on the foreign-country exclusion.

Next, defendant claims that the tort of "negligent clearance for overseas assignment" does not exist under North Carolina law.[1] Because defendant attacks the sufficiency of plaintiffs'

---

[1] Defendant also argues that the "due care" exception in 28 U.S.C. § 2680(a) mandates dismissal of this claim. Due care requires a finding that the officer followed the dictates of the regulation in question. See, e.g., Welch v. United States, 409 F.3d 646, 652 (4th Cir. 2005). Because this defense is inextricably intertwined with the merits, the court views the evidence and all reasonable inferences in the light most favorable to plaintiffs, and finds that summary judgment on this issue would be inappropriate. See Scott, 550 U.S. at 378; Kerns, 585 F.3d at 193. Thus, the court rejects the government's argument.

5

pleading, the court assumes the truthfulness of the facts alleged. See Kerns, 585 F.3d at 193. In determining the extent of defendant's liability, a court holds the United States liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. In United States v. Olson, the Court made clear that this standard requires a court to look "further afield" to analogous private torts. 546 U.S. 43, 46–47 (2005). Thus, although defendant "is satisfied this tort [of negligent clearance for overseas assignment] does not exist in North Carolina," the court must look further afield than defendant's limited characterization.

The court concludes that plaintiffs' claim is analogous to negligence per se. A violation of a federal regulation can give rise to negligence per se liability under state law. Fla. Auto Auction of Orlando, Inc. v. United States, 74 F.3d 498, 502 n.2 (4th Cir. 1996).[2] To prove negligence per se under North Carolina law, a plaintiff must show that the defendant violated a public-safety statute or regulation, that plaintiff belonged to the class of persons intended to be protected by the statute or regulation, and that defendant's violation of the statute or regulation proximately caused plaintiff's injury. See, e.g., Stein v. Asheville City Bd. of Educ., 360 N.C. 321, 326, 626 S.E.2d 263, 266 (2006); Baldwin v. GTE S., Inc., 335 N.C. 544, 546–47, 439 S.E.2d 108, 109 (1994); Osburn v. Danek Med., Inc., 135 N.C. App. 234, 243, 520 S.E.2d 88, 94 (1999). A public-safety statute or regulation is one that imposes upon a defendant a specific duty for the protection of others. Stein, 360 N.C. at 326, 626 S.E.2d at 266. Furthermore, a violation of a healthcare regulation can provide proof of deviation from the standard of care in a medical malpractice action. Griggs v. Morehead Mem'l Hosp., 82 N.C. App. 131, 133, 345 S.E.2d 430, 431 (1986). Here, plaintiffs allege that defendant's physicians violated their specific duty to follow a regulation designed to protect dependents of military personnel by ensuring adequate medical care at the overseas base, that A.L.R.

---

[2] In Florida Auto Auction, the court found that the plaintiff's negligence per se claim was barred by South Carolina's public duty doctrine. 74 F.3d at 502–04. North Carolina's public duty doctrine is limited to law enforcement personnel. Beckles-Palomares v. Logan, 688 S.E.2d 758, 761 (N.C. Ct. App. 2010).

6

was a military dependent assigned overseas, and that the violation proximately caused A.L.R.'s loss of testicular function. Thus, plaintiffs allege a tort analogous to a private tort under North Carolina law. Accordingly, the court concludes that it has jurisdiction to hear the claim. Kerns, 585 F.3d at 193.

Finally, defendant claims that plaintiffs failed to administratively exhaust their alternative theory of medical malpractice, specifically that A.L.R. had retractile testicles rather than undescended testicles and his physicians at Shaw AFB failed to adequately monitor his condition, resulting in the loss of testicular function. Because defendant challenges the veracity of facts underpinning subject-matter jurisdiction separate from the merits, the court resolves the disputed jurisdictional facts. Kerns, 585 F.3d at 193. Defendant claims that plaintiffs failed to provide sufficient written notice to the agency to investigate the claim. See Ahmed, 30 F.3d at 517. The administrative claim's language must "serve[] due notice that the agency should investigate the possibility of particular (potentially tortious) conduct." Staggs v. U.S. ex rel. Dep't of Health & Human Servs., 425 F.3d 881, 884 (10th Cir. 2005) (quotations omitted); Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 40 (1st Cir. 2000); Drew v. United States, 217 F.3d 193, 198 (4th Cir. 2000), vacated, reh'g en banc granted (Sept. 8, 2000), aff'd by equally divided court without opinion, 231 F.3d 927 (4th Cir. 2000); Conn v. United States, 867 F.2d 916, 918–19 (6th Cir. 1989); GAF Corp v. United States, 818 F.2d 901, 919–20 (D.C. Cir. 1987).

Here, plaintiffs' administrative claim provided ample notice to defendant to allow investigation of the alleged tortious conduct. Plaintiffs' claim alleged that military doctors deviated from the standard of care in treating A.L.R.'s testicular condition. Although the claim concluded A.L.R.'s condition was actually one of undescended testicles, it included allegations that defendant breached the standard of care for retractile testicles. Specifically, plaintiffs alleged that the defendant's physicians "determined that [A.L.R.] did not require any testing or monitoring or medical care for [the hypermotile] diagnosis, and advised [A.L.R.'s] parents accordingly." Pls.'

7

Opp'n, Ex. C at 22, 25, 28. Defendant rejected their claim, finding that their "providers met [the] standard of care when they examined [A.L.R.] on every occasion." Id., Ex. E at 2. This decision was based on an expert's review of A.L.R.'s complete medical records, including the treatment received at Shaw AFB, and the expert's conclusions that A.L.R.'s testicles re-ascended "at some point between August 2000 and December 2002." Id. Thus, the administrative claim provided sufficient notice to defendant to allow it to investigate the possibility of deviations from the standard of care in the treatment of a hypermotile or retractile testicular condition. Accordingly, the court finds that plaintiffs sufficiently exhausted administrative remedies to allow the court to retain jurisdiction over their FTCA claim. See Kerns, 585 F.3d at 193; Plyler, 900 F.2d at 42.

III.

In sum, defendant's motion to dismiss for lack of subject-matter jurisdiction [D.E. 45] is DENIED. Defendant's motion to strike is DENIED AS MOOT. Not later than June 15, 2011, the parties shall file a joint statement updating the court on the status of this case. That report shall advise the court of the status of settlement negotiations and provide possible trial dates in August and September. The report also shall state the projected number of days needed for trial. This matter will be set for trial by separate order.

SO ORDERED. This 26 day of May 2011.

JAMES C. DEVER III
United States District Judge